IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>vs.<br><br>WILLIAM VINCENT CLARKSON,<br><br>                    Defendant. | FINDINGS OF FACT,<br>CONCLUSIONS OF LAW,<br>AND ORDER<br><br>Case No.  2:06CR734 DAK |

       This matter is before the court on Defendant's Motion to Suppress, after remand from the Tenth Circuit Court of Appeals.  This court had previously denied the Defendant's Motion to Suppress.  On appeal, the Tenth Circuit found that the court "erred in concluding Officer Sutera's reasonable reliance on Oso's (a narcotics dog) reliability warranted a finding of probable cause and declining to rule on whether Oso was qualified."  Accordingly, the Tenth Circuit directed this court to determine whether Oso was trained or otherwise reliable because "the existence of probable cause in this situation depends not on the reasonableness of Officer Sutera's actions, but the existence of an indication by a qualified narcotics dog."  The Tenth Circuit stated that "[w]hile successful completion of a training course and a current certification would be satisfactory, we do not exclude the possibility that reliability can be established by other evidence."

       An evidentiary hearing on the issue was held on April 14 and 15, 2009.  The parties had submitted briefing prior to the evidentiary hearing, and they also submitted further briefing on May 12, 2009.  At the evidentiary hearing, Defendant was represented by Matthew R. Lewis,

and the United States was represented by Adam S. Elggren.  Since taking the matter under advisement, the court has further considered the evidence submitted by the parties at the evidentiary hearing, along with the law relating to this issue on remand.  Now being fully advised, the court renders the following Findings of Fact, Conclusions of Law, and Order.

## PROCEDURAL BACKGROUND

On October 26, 2006, Defendant was charged with one count of violating 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm.  On December 7, 2006, Defendant moved to suppress the gun on the ground that the search was illegal.  The court held evidentiary hearings regarding the motion on March 27 and 28, 2007, July 13, 2007, and August 10, 2007.  At the hearing on August 10, 2007, Steven Nicely, an expert on the training and performance of narcotics detection dogs, testified that the evidence showed that Police Service Dog Oso was not a well-trained dog whose alert could be used to establish probable cause.  The parties also submitted briefing on the issues and expert reports from Steven Nicely and the Government's expert, Sergeant Wendell Nope, regarding the training and reliability of Oso.

At the conclusion of the August 10, 2007 hearing, the court stated that Defendant's expert, Mr. Nicely, was "very convincing" and that the court's opinion was that "Oso was not a certified dog, and there were some real—not in any way intentional, but that it wasn't the kind of search upon which you could really find probable cause in if you were just basing it all on the search."  Despite this conclusion, however, the court denied Defendant's motion to suppress in an Order dated August 20, 2007.  In that Order, the court reasoned that it could deny the suppression motion without determining whether Oso was qualified as a narcotics dog because "[i]n addition to the factors which gave rise to a reasonable suspicion that Clarkson was involved in criminal activity, Officer Sutera reasonably relied on Oso's indication, even if mistaken, which provided him with probable cause to

search."  The court reasoned that Officer Sutera's reliance on Oso's indication was reasonable because there was no evidence to suggest that Officer Sutera knew that Oso may not be reliable. Therefore, the court did not determine at that time whether or not Oso was qualified.

Thereafter, Defendant entered a conditional guilty plea allowing him to appeal the denial of his motion to suppress to the Tenth Circuit.  A judgment of conviction was entered on March 13, 2008.  By a decision filed January 6, 2009, the Tenth Circuit reversed the court's decision on Defendant's Motion to Suppress and remanded the case to this court to determine whether Oso was qualified to act as a narcotics detector dog.

Specifically, the Tenth Circuit directed this court to determine whether Oso was trained or otherwise reliable because "the existence of probable cause in this situation depends not on the reasonableness of Officer Sutera's actions, but the existence of an indication by a qualified narcotics dog."  The Tenth Circuit stated that "[w]hile successful completion of a training course and a current certification would be satisfactory, we do not exclude the possibility that reliability can be established by other evidence."

## FINDINGS OF FACT[1]

There is no dispute that Oso was not a certified narcotics dog at the time of the incident in question.  Thus, the question before the court is whether Oso was nevertheless a "qualified," "trained" or "otherwise reliable" narcotics dog.[2]

Oso began some scent-identification training in June 2006.  This training was not part of

---

[1] The facts leading up to the vehicle stop are not at issue in this motion and are set forth in detail in the Tenth Circuit's decision in *USA v. Clarkson*, 551 F.3d 1196 910th Cir. 2009).

[2] The court previously found that Oso "indicated," and the parties have agreed that whether Oso "indicated" is not at issue in this motion and that the only issue involves Oso's qualifications.  Tr. at 22 (4/14/09).

a formal course, but was done by his handler, Officer Anderson.  The records demonstrate that this training occurred on August 3, 4, 5, and 8, 2006.  At that point, Officer Anderson decided to delay any further training until the POST training course started, and he focused instead on some maintenance patrol training with Oso.  The POST certification course began on approximately August 8, 2006.  The course generally runs for eight weeks, and Oso finished approximately six of those eight weeks before he suffered an injury and could not finish the last two weeks of the certification course at that time.

The POST course is 40 hours/week, totaling 320 hours for the entire course.  The documentation indicates that Oso spent less than 2300 (less than 39 hours) in training, which is approximately 15% of the total time of the certification course.  Officer Anderson testified that the documentation did not reflect the actual amount of training time, but there is no dispute that Oso did not complete approximately the last two weeks of the course.  Oso's deployment in this case was his first experience in the field, and thus he has no prior field history that could demonstrate his reliability or that he was properly trained.

At the time Oso went through the POST training course, Officer Anderson was training Oso, but he also was training to become a certified trainer himself, and thus he was going through the course as an instructor as part of the certification process.   His responsibilities also included training other handlers and their dogs, which is one reason he failed to fill out the training forms regarding Oso.

The training records produced by the government are incomplete and inadequate.  They do not give essential details regarding Oso's performance or even the nature and circumstances of Oso's training–such as how much of a certain drug was placed and whether it was placed near

4

other stimuli that might exist in a real world situation (such as food, tobacco, or other odorants). Defendant's expert, Steven Nicely, testified that Oso's training records cannot show that he was a well-trained or qualified narcotics-detection dog because they don't provide sufficient detail of the test situations. As explained by Mr. Nicely's report, a narcotics detection dog's performance records are necessary to allow both the officer and his supervisors to identify patterns in the dog's training that may not otherwise be immediately obvious to the handler but could cause a dog to respond erroneously. The records would also identify training deficiencies and allow for creation of tests to make sure that problems have been corrected.

According to Officer Anderson, Oso is a passive indicator who indicates by sitting, staring, or laying down, though he "normally sits and stares." He testified that Oso indicated on the passenger side of the exterior of Clarkson's vehicle by going "down into a sit" near the handle of the door. He also wrote in his initial police report that upon entering the vehicle Oso "lied down" to indicate on the drivers and passenger seats of the vehicle. As observed on the video, however, Oso barks at about the time that he purportedly sat to indicate on the exterior of the vehicle, and he does not lay down on either the driver's or passenger's seats.

After initially testifying that Oso laid down, Officer Anderson provided conflicting testimony and admitted that the video did not show Oso laying down and that he could not remember how Oso indicated that night. After being confronted with this conflicting testimony, Officer Anderson testified that Oso indicated on the passenger seat by "kind of just the pinpointing of half lie-down and a stare" and that the dog just "stared" as an indication on the driver's seat. Officer Anderson also stated that the main thing he looks for is the dog's "stare," which he acknowledged is "subjective" but claimed to be trained to recognize. The

5

demonstrated lack of consistency in the manner in which Oso is said to indicate also suggests that Oso is not properly trained. Where Oso does not demonstrate a consistent response each time he encounters a target odor, it cannot be objectively determined whether Oso is reacting to the presence of the target odor or to another stimulus. Because of the importance of a consistent indication, Mr. Nicely testified that he would not consider a dog well trained if it does not exhibit the same behavior each time it indicates– i.e., that "if it's a sit dog, he will sit, and he will do nothing else."

As stated above, the videotape shows that Oso barked at about the time that, according to Officer Anderson's testimony, Oso sat to indicate at the exterior of Clarkson's vehicle. This is not a reaction consistent with an indication by a well-trained passive indicator. Even Sgt. Nope, the Government's expert, describes Oso's barking as "beginner" or "rookie" behavior, although he then asserts that it does not diminish Oso's reliability. Officer Anderson, on the other hand, suggests that Oso is a yappy dog and was demonstrating frustration at not getting his toy after he indicated on the passenger side door. Officer Anderson admits that this is something he has "had to work with" with Oso.

In addition, on the videotape, Oso begins his search with a closed mouth. Mr. Nicely testified that this "closed-mouth sniff" shows that Oso initially started a proper sniff of the vehicle presented to him by Officer Anderson. Soon thereafter, however, the video shows that Oso's mouth is open. According to Mr. Nicely, an open mouth is evidence that a dog is not actively sniffing and is unacceptable in a detector dog. According to Mr. Nicely, the videotape shows that Officer Anderson likely cued Oso into indicating by considerably slowing his search pattern when he approached the passenger side door and standing in a manner so as to block the dog. Overall,

6

Mr. Nicely testified that there is "nothing in the video that supports that this dog is well trained."

Before deploying Oso, Officer Anderson and Officer Sutera had candid conversations about Oso's lack of training.  First, Officer Sutera testified that he asked Officer Anderson whether he had decided to continue to work with Oso's passive indication or was still thinking about changing him to be an aggressive indicator.  According to Mr. Nicely, the fact that Officer Anderson was considering fundamentally changing Oso's method of indicating shows that Oso was not adequately trained at the time.  If Oso were trained, there would be no need to consider working with an aggressive indication instead.

Ultimately, Officer Anderson testified that, as of the day of the search, Oso was qualified to perform sniff searches for narcotics and that on the date of the incident, there was nothing to separate Oso in terms of his capabilities from a dog that had been certified.  However, the inconsistencies in Officer Anderson's testimony somewhat undermine his credibility.

Essentially, the court is faced with a "battle of the experts."  Both experts possess lengthy lists of various educational and professional achievements and other qualifications.  Sgt. Nope opines that, based upon Officer Anderson's testimony and first-hand observation of Oso, that Oso was a well-trained narcotics detection dog. Sgt. Nope's testimony, however, is somewhat undermined by the fact that his expert report, submitted in 2007, does not mention that Mr. Nicely ever had personal interaction with Oso or that he had watched Oso perform tasks during his training period.   Given the persuasive testimony of Mr. Nicely, the court ultimately credits his testimony that Oso was not a well-trained narcotics detection dog at the time of the incident in question.

## CONCLUSIONS OF LAW

Under the Fourth Amendment, "police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo,* 500 U.S. 565, 580 (1991). The Tenth Circuit "has consistently held that probable cause can be based on alerts by trained dogs." *United States v. Kennedy,* 131 F.3d 1371, 1378 (10th Cir. 1997). It has further indicated the narcotics dog must be "reliable" or "trained" in order for an alert to support probable cause. *See, e.g., Kennedy,* 131 F.3d at 1378 (stating indications by trained or reliable narcotics dogs support probable cause). The Tenth Circuit stated that "[w]hile successful completion of a training course and a current certification would be satisfactory, we do not exclude the possibility that reliability can be established by other evidence."

In addition, a party seeking to suppress evidence bears the burden of proving the dog is unqualified. *See Moore,* 22 F.3d at 243; *United States v. Clarkson* 551 F.3d 1196, 1202-1203 (10th Cir. 2009).

Given the fact that Oso completed only six weeks of the eight-week training course; that Oso's training records do not support that he is well-trained, qualified, or reliable; the lack of consistency in the manner in which Oso indicated; that Officer Anderson had considered changing Oso to be an aggressive indicator, which, according to Mr. Nicely, demonstrates that Oso was not adequately trained at the time; that the video does not convince the court that Oso was a well-trained, qualified, or reliable narcotics detection dog; and that the court credits Mr. Nicely's testimony over that of Officer Anderson and/or Sgt. Nope, the court finds that Defendant has satisfied his burden of demonstrating that Oso was unqualified to serve as a narcotics detection

dog at the time he was deployed in this case.

Therefore, the court finds that the search of Clarkson's vehicle was not supported by probable cause, and the evidence discovered during that search must be suppressed because Oso, on whose indication the search was justified, was not a qualified, well-trained and/or reliable narcotics detection dog.

## CONCLUSION

Based on the above reasoning, IT IS HEREBY ORDERED that Defendant's Motion to Suppress is GRANTED.

DATED this 10th day of June, 2009.

BY THE COURT:

_Dale A. Kimball_
DALE A. KIMBALL
United States District Judge